406 P.2d 197

Roy A. WALLER, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Howard P. Foley Company, Respondent.

No. 8173.

Supreme Court of Arizona.
En Banc.

Sept. 30, 1965.

Rehearing Denied Nov. 2, 1965.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for petitioner.

Robert A. Slonaker, Phoenix, for respondent Industrial Commission of Arizona; Richard J. Daniels, Charles M. Wilmer, Courtney L. Varner, Merton E. Marks, and Glen D. Webster, Phoenix, of counsel.

UDALL, Justice.

By certiorari petitioner seeks review of an award of the Industrial Commission denying him compensation for an alleged injury by accident arising out of and in the course of his employment. This is the third time this case has been before this Court; however, in neither of the prior cases did we resolve the issues that we are now asked to decide. Waller v. Howard P. Foley Company, 94 Ariz. 225, 382 P.2d 693 (1963); Waller v. Howard P. Foley Company, 90 Ariz. 337, 367 P.2d 795 (1961).

Petitioner, Roy A. Waller, fell while working on a scaffold on February 10, 1960. He was employed at that time as a journeyman electrician for the Howard P. Foley Company at Hayden, Arizona. Petitioner claims injury to his back, shoulder and neck as a result of the accident.

After the accident, petitioner remained in the hospital in Phoenix for approximately four weeks. He was examined on March 8, 1960 by a group of three doctors, appointed by the Commission, and by its medical advisor. They were of the opinion there was no evidence of organic disease or residuals of the injury and that in two weeks the patient could return to his regular work. Petitioner was released from the hospital on the following day and his claim proceeded to a point where, on May 2, 1960, he was granted medical benefits to March 22, 1960, and compensation to March 21, 1960. The Commission made a finding that "applicant has no physical disability resulting from the accident." This finding was reaffirmed by the Commission in its "Decision upon Rehearing and Findings and Award", dated November 6, 1963.

Petitioner has a history of injuries which dates back to 1954. Prior to the accident in 1960, he had been treated at least three other times for injuries to his back. In 1959, due to one of these injuries, he was hospitalized for thirty-three days in Wyoming. Less than three months before the injury in question he suffered a back sprain in Tempe, Arizona and received medical treatment for the injury although he did not lose any time from work.

After being released from the hospital in March 1960, petitioner returned to his home in Magnolia, Arkansas. On April 19, 1960, he sought employment and returned to his regular work as a journeyman electrician. Because of his alleged inability to perform his duties, petitioner sought additional medical treatment. On May 14, 1960 petitioner was finally referred to Dr. Kenneth Jones, an orthopedic specialist in Little Rock, Arkansas, who concluded that, as a result of the three accidents, petitioner had suffered permanent injury to his back. In the course of the examination Dr. Jones did a myelogram but the results were inconclusive and he did a discogram. On the basis of the discogram, Dr. Jones concluded that petitioner was suffering from a degeneration of the disc at the L–4, L–5 level. On May 31, 1960, Dr. Jones operated upon petitioner and found an extruded disc at the L–4, L–5 level which was surgically removed. The disc at the L–5, S–1 level was also removed. On October 11, 1960, in a report to the Industrial Commission, Dr. Jones stated: "this patient does experience residual permanent partial disability which will ultimately prove to be in the nature of approximately 20 to 25 per cent as related to the body as a whole as a result of the disability of the right shoulder, cervical region and the residual disability in the lower lumbar area."

Petitioner first contends that "The Industrial Commission erred in its Findings 7 to 12 of its 'Decision upon Rehearing and Findings and Award', dated November 6, 1963 (Record 56), particularly as to Finding No. 9 stating 'that applicant's disability, if any, is not related to nor caused by the injury of February 10, 1960', * * *."

The petitioner is faced with certain well accepted rules of workmen's compensation law in establishing his claim for compensation.[1] A claimant has the burden to affirmatively show that he is entitled to compensation and the Commission is not required to disprove such a claim. Helmericks v. AiResearch Mfg. Co. of Arizona, 88 Ariz. 413, 357 P.2d 152 (1960). Also, where the evidence is in conflict or different inferences may be drawn therefrom, findings of fact of the Commission will not be disturbed and, where two inferences may be drawn, the Commission is at liberty to choose either and its conclusion will not be disturbed unless it is wholly unreasonable. Books v. Industrial Commission, 92 Ariz. 302, 376 P.2d 769 (1962). Muchmore v. Industrial Commission, supra.

Applying these principles to the facts of the instant case, we do not feel petitioner has shown by uncontradicted testimony that any back difficulty he might have had subsequent to the accident of February 10, 1960 was related to the acci-

1. See Muchmore v. Industrial Commission, 81 Ariz. 345, 306 P.2d 272 (1957).

dent. There is no question that petitioner was involved in an accident which arose out of and in the course of his employment. Likewise, it is admitted that he was injured and received medical treatment for his injury from this accident. However, petitioner failed to show the medical or legal causation between the accident of February 10, 1960, and the subsequent disc surgery of May 31, 1960. The Commission found that petitioner underwent surgical correction for degenerative disc and, relying upon their medical advisor, stated that such degeneration was the result of the aging process and multiple minor trauma and not a single injury.

The medical evidence as to the causal connection between the accident and the subsequent surgery is inconclusive. Petitioner's back surgery was performed by Dr. Jones, who testified at the July 2, 1962 hearing. Dr. Jones reviewed the history of the case, including the three prior accidents which involved injuries to petitioner's back. Dr. Jones was asked:

"Q. Can you tell or could you tell from an operation such as the one that you performed on Mr. Waller how recent a ruptured disc or slipped disc has been?

"A. No. Only in rare instance can you tell with any degree of certainty exactly how long this thing has been out. * * *"

The doctor was then asked if there was any way for him to tell whether or not it was a result of the last accident. He answered:

"A. Nothing except the patient's history, and his history wasn't conclusive enough as I understood it for me to state specifically where this thing came from. That is the reason I set forth these three histories as I did."

Dr. Paul Sizemore, petitioner's family doctor for many years, also testified at the July 2, 1962 hearing. In that hearing Dr. Sizemore was asked:

"Q. Have you examined him after February 10, 1960, with reference to his back?

"A. I didn't treat him for this disc deal."

From this testimony it would appear that Dr. Sizemore had no knowledge of the working disability or medical causation relating to the accident of February 10, 1960, and the subsequent disc surgery of May 31, 1960.

The Commission relied upon the Medical Consultation Board report, dated March 8, 1960, which concluded that the claimant showed no evidence of organic disease or residuals of the injury in question. The Board was of the opinion that he had recovered from the effects of the injury in question without disability and

was no longer in need of treatment. We have often said that we will not substitute our opinion for that of the Commission where the Commission has resolved a conflict in medical testimony. See, e. g., Rahar v. Industrial Commission, 94 Ariz. 170, 382 P.2d 656 (1963); Bishop v. Industrial Commission, 94 Ariz. 65, 381 P.2d 598 (1963). We have also said that the Commission should and must give consideration to the opinion of the Medical Board, but that it is not bound by its conclusions; particularly where the conclusions are wholly unsupported by the actual facts. In the instant case, however, the conclusion of the Medical Board is not contradicted by the medical testimony. The medical testimony was equivocal as to the cause of the petitioner's condition and it was not established affirmatively that the injury caused any disability.

As to the causal relation between the accident of February 10, 1960 and the subsequent disc surgery, the petitioner argues that common sense dictates there is a connection. Where the result of an accident is not one which is clearly apparent to a layman, such as the loss of a limb or external lesion, the physical condition of an injured employee after an accident and the causal relation of the accident to such condition usually can only be determined by expert medical testimony. Lowry v. Industrial Commission, 92 Ariz. 222, 375 P.2d 572 (1962). Here, there was an attempt to show

a causal relation between the injury and the subsequent disc surgery by medical testimony, which failed as indicated above. We will not, therefore, substitute our own opinion for the inference that the Commission drew from the testimony.

Petitioner claims that the Commission failed to make a specific finding with reference to the condition of his shoulder and any disability therefrom and, thus, the findings were deficient requiring the setting aside of the award. The rule, as set forth in Sproul v. Industrial Commission, 91 Ariz. 128, 370 P.2d 279 (1962), is:

"Although it is not essential that specific findings of fact be made on every issue involved in a hearing the findings as made should be of such a nature that they necessarily dispose of all the material issues involved."

The record shows that petitioner injured his shoulder in the accident of February 10, 1960. At the consultation of March 8, 1960, petitioner complained of pain and limitation of motion in that shoulder. The consultation group found no evidence of organic disease or residuals of the injury. This finding necessarily included all organic complaints, and it was not necessary for the consultation to include specific findings of fact. The Commission adopted this report as part of their findings and thus it is of such a nature to dispose of the shoulder complaint

■ Although petitioner contends his alleged disability has resulted in a loss of earning capacity, the record does not support this contention. A.R.S. § 23–1044, subsec. D (1956). The Commission found the petitioner's average monthly wage was $408.49. The transcript indicates that during 1960, after the accident, petitioner's average monthly wage exceeded $500; his average monthly earnings in 1961 exceeded $580; and his average monthly earnings for the first five months of 1962 was close to $700. During this period claimant was engaged in his regular occupation as an electrician. The petitioner contends, and produced witnesses at the July 2, 1962 hearing, to the effect that he could perform only light work and was being carried by co-employees. There were, however, letters from two employers stating petitioner was not on light duty and received no special consideration. We do not find the Commission's conclusion, in believing that the latter was true, wholly unreasonable. In workmen's compensation proceedings, if the evidence is in conflict or where different inferences could be drawn therefrom, the finding of the Commission will not be disturbed. Wheeler v. Industrial Commission, 94 Ariz. 199, 382 P.2d 675 (1963).

Neither do we find merit to petitioner's second assignment of error, i. e., the Commission's action was arbitrary in arriving at the average monthly wage of the appli-cant by restricting its computations to a period of approximately one year prior to the accident. Under the provision of A.R.S. § 23–1041 (1963), the Commission fixed the average monthly wage of the petitioner prior to the injury at $408.49. The Commission used a period of 405 days in order to arrive at its findings. In arriving at this figure the Commission eliminated the total number of days petitioner was off work because of hospitalization. See Pettis v. Industrial Commission, 91 Ariz. 298, 372 P.2d 72 (1962). Petitioner contends that his average monthly wage should have been approximately $500 per month, based on his income tax returns for the past three years.

■ The measure of compensation for injuries received in industrial accidents is computed on the basis of the injured employee's "average monthly wage at the time of injury." A.R.S. § 23–1041, subsec. A (1963). According to Kennecott Copper Corp. v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839 (1944), the thirty days previous to the injury should be the basic wage for computing compensation. Where, however, the employment is intermittent for reasons over which the employee has no control or the loss of time is not a common and ordinary incident to the particular employment, the Commission should omit such time in computing the average monthly wage. In Pettis v. Industrial Commission,

supra, we approved the computation of average monthly wage by averaging the wages earned over a twelve-month period. Consistency demands that we approve the Commission's method of computation in this case.

In the instant case the average monthly wage was based upon a period from January 1, 1959 to February 10, 1960, a total of 406 days. From this period, deductions were made for time off work due to injuries in Cheyenne, Wyoming, and a 1959 injury in Tempe, Arizona. The recomputed average monthly wage was computed by totaling his income from six employers petitioner worked for during this period. This computation is according to the method suggested by Pettis v. Industrial Commission, supra, where the employment is intermittent. Here, the petitioner worked for six employers within thirteen months, which indicates that both his personal pattern of employment and that of the industry was intermittent. We cannot say that the method adopted by the Commission constituted error, in the absence of some statutory provision for computing the average monthly wage.

Award affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and McFARLAND, JJ., concurring.