494 P.2d 37

Carl W. HUME, Petitioner,

v.

The INDUSTRIAL COMMISSION
of Arizona, Respondent,

Truly Nolen Exterminating, Inc.,
Respondent Employer,

Royal-Globe Insurance Co., Respond-
ent Carrier.

No. 1 CA–IC 623.

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 28, 1972.

Rehearing Denied March 28, 1972.

Review Denied May 9, 1972.

Bernard I. Rabinovitz, Tucson, for peti-
tioner.

William C. Wahl, Jr., Chief Counsel,
The Industrial Commission of Arizona,
Phoenix, for respondent.

Glen D. Webster, Jr., Phoenix, for re-
spondent carrier.

STEVENS, Presiding Judge.

This is another heart case, the type of
case which must be resolved by an evalua-
tion of the medical testimony. The prob-
lem for his Court is whether the medical
evidence sustains the award. In the event
of a conflict, the hearing officer, initially,
and the Commission, on review, must eval-
uate the medical evidence. If there is
medical evidence which sustains the award,
the award must be affirmed.

The petitioner had been an employee of
the employer named in the caption of this
opinion for approximately 14 years. On 21
December 1969 he was promoted to the po-
sition of supervisor. In this capacity his
work week increased by over 50% in the
number of hours devoted to his employ-
ment. In this capacity he experienced ex-
tensive stress in dealing with the public.
He engaged in hard physical labor above
and beyond that in which he had engaged
for sometime prior to 21 December 1969.
He had a series of physical examinations
which indicated no "heart" problems. For
approximately six weeks prior to 26 March
1970, he experienced a series of chest
pains, these being in intervals of several
days. These pains were diagnosed as

digestive upsets and in the later view were recognized as being symptoms of cardiac insufficiency. On 25 March 1970, in 90° temperature, he was working on a roof with another employee. They were covering and sealing the house with large, heavy tarps preparatory to fumigating the house. While so engaged he again experienced similar chest pains. He completed his work for the day, though of a less strenuous variety. He retired early. He was preparing to leave his home on the morning of 26 March when he sustained a myocardial infarction and was promptly hospitalized for approximately two weeks. He was then 41 years of age.

The petitioner made a claim for workmen's compensation. The carrier issued its notice of claim status denying that there was a causal relationship between the petitioner's work and the infarction. By timely procedural steps the claim was set for a hearing before a hearing officer and the hearing was conducted on 4 September 1970.

The carrier secured the presence of Dr. Joe Erlich, a cardiologist. The petitioner presented a portion of his own testimony. There was also evidence as to his basic medical history. Dr. Erlich had previously reviewed the records of the petitioner's hospitalization and attended the hearing, listening to the evidence, the history if you will, in relation to the petitioner's background. Dr. Erlich recognized that not all cardiologists share his professional opinions. He testified that the fact that he had not personally conducted a physical examination of the petitioner did not affect his professional opinion. Dr. Erlich's participation was more than a "file review" and comes within the opinion of Condon v. The Industrial Commission of Arizona, 108 Ariz. 65, 492 P.2d 1172 (14 January 1972), in the matter of proper receipt and consideration of the doctor's testimony.

At the risk of oversimplification, we quote two excerpts from Dr. Erlich's testimony:

"So the only time in my judgment, based on our present knowledge, that you can causally relate a myocardial infarction to something physical or emotional to which the patient was previously subjected is under the possible set of circumstances: One, the emotional and/or physical stress would be very unusual for that particular patient; and, two, that the symptoms come on either coincidental with the increased exertion or stress or within a matter of minutes afterwards.

"Here you have a hard day's work on March 25th, which the patient incidentally was able to complete. And then you have, based on what I have heard and not heard, an average night's rest, and minutes after awakening the next morning, we have a myocardial infarction.

\*  \*  \*  \*  \*  \*

"A. The fact he had coronary insufficiency meant he had something wrong with the coronary arteries. If he didn't have anyting wrong with the coronary arteries he probably never would have had an infarct, because an infarct following coronary insufficiency is exceptionally rare.

"The other problem—did the physical exertion, was your question, and so I understand you clearly, did the exertion in the presence of a coronary insufficiency accelerate the occurrence of the infaraction (sic); is that what you asked?

"Q  Yes.

"A  The answer, in my judgment, is no. Can I expand with one or two sentences?"

Reviewing the entire record including the above-quoted testimony convinces this Court that the hearing officer's award finding an absence of an industrially related causal relationship, which award was approved on review by the Commission, must be affirmed.

The Commission action affirming the award of the hearing officer carries the signatures of three Commissioners. The

award which followed is in conformity therewith and is valid even though it is a "rubber-stamped" award. The action of the Commissioners affirmatively appears in the file. Verdugo v. The Industrial Commission of Arizona, 108 Ariz. 44, 492 P.2d 705 (14 January 1972).

There are some procedural problems with reference to matters contained in the file of the respondent-carrier which we do not discuss as these matters do not affect our final opinion in connection with the claim now before us.

The award is affirmed.

CASE and DONOFRIO, JJ., concur.