MARIA FLOREK, PETITIONER-APPELLEE, v. BOARD OF EDUCATION, CITY OF NEWARK, RESPONDENT-APPELLANT.

Essex County Court
Law Division

Decided March 12, 1952.

*Mr. Joseph P. Dunn* (*Mr. William J. Straub,* of counsel), attorney for petitioner-appellee.

*Mr. Walter H. Jones* (*Mr. Fred W. Jung, Jr.,* of counsel), attorney for respondent-appellant.

NAUGHRIGHT, J. C. C. Respondent appeals from an award to petitioner entered on November 29, 1951, by the Workmen's Compensation Division, for increased disability, three and one-half per cent of total permanent.

Petitioner sustained injuries to her back and chest as a result of an accident occurring on March 18, 1948, and after hearing before the Workmen's Compensation Bureau (now Division of Workmen's Compensation) was awarded three per cent partial permanent disability on October 18, 1948.

On September 9, 1950, petitioner filed a second petition alleging her disability had increased since the prior award. Following hearings thereon, the Workmen's Compensation Division on November 29, 1951, determined that petitioner, although not suffering from any increased disability of an orthopedic nature, had sustained "some increase in her disability on the basis of a neurosis."

The respondent, challenging the legal propriety of this ruling, contends that petitioner failed to sustain the burden of proving an increase in her incapacity since the previous determination; that the petitioner in her original claim having failed to allege a neurosis was now barred from maintaining a second petition for increased disability based upon a neurosis; that the Workmen's Compensation Division lacked

jurisdiction to entertain the claim for increased neurological disability because the statutory limitation period (two years from the date of the accident) had expired; that the Workmen's Compensation Division erred in awarding increased disability based upon a neurosis since there was no comparison made of petitioner's condition at the time of the original determination with her present condition; and that the increase in incapacity, if any, is attributable to some cause other than the compensable accident of March 18, 1948.

The initial question for this court's determination is whether, in view of the fact that petitioner's second claim was not filed within two years of the occurrence of the accident, and also in view of the fact that there was no specific allegation of a neurosis in her original petition, petitioner is now precluded from maintaining this second petition for increased disability based upon a neurosis.

It is the contention of respondent, in this regard, that petitioner's claim is based upon two separate and distinct injuries allegedly arising out of the accident—one orthopedic; one neurological—and that having failed to assert and prove the latter within the statutory limitation period she is now barred from obtaining an award based thereon.

It is further argued that by petitioner's failure to assert any claim for any permanent disability referable to a neurosis, in her initial petition, and no award having been made therefor, she is foreclosed from seeking increased disability based upon a neurosis.

As authority for both these propositions respondent relies heavily upon *Ponek v. American Steel Foundaries,* 19 *N. J. Misc.* 640 (*Dept. Labor* 1941) (which, like the instant case, involved a petition for increased disability based upon a neurosis) and *Herbert v. Newark Hardware & Co.,* 107 *N. J. L.* 24 (*Sup. Ct.* 1930); affirmed, 109 *N. J. L.* 266 (*E. & A.* 1932).

However the more recent decision of *Ginter v. Westinghouse Electric & Manufacturing Corp.,* 11 *N. J. Super.* 338 (*App. Div.* 1951) appears to be controlling on these issues.

In the *Ginter* case the Appellate Division of our Superior Court held, in a somewhat comparable situation, that petitioner was not barred from maintaining a petition for increased incapacity based upon an injury to her back although her original petition did not specifically allege a back injury. The court said:

"The finding here that plaintiff was partially incapacitated by injuries to her leg, does not bar a later finding that injuries which manifested themselves at the time of the accident and increased in their incapacitating effect at a subsequent date, were compensable."

Similarly, the determination of the bureau that petitioner suffered a three per cent orthopedic disability of the back and chest ought not to bar a later determination, on a petition for an increase, that neurological injuries which manifested themselves following the accident and which increased in their incapacitating effect at a subsequent period were compensable.

The fact that *Ginter v. Westinghouse Electric & Manufacturing Corp., supra,* dealt only with injuries of an orthopedic nature does not justify a differentiation between that case and the case at bar. The principle therein enunciated is equally applicable here.

In *Torbyn v. South River Sand Co.,* 6 *N. J. Super.* 1 (*App. Div.* 1949) petitioner was permitted to maintain a petition for increased disability even though the original award stated that under the proofs petitioner had not suffered any permanent injury. The court therein said that "medical and surgical experience has proven that an injury which at first appears to be trifling may later be revealed as having caused a permanent physical disability." It was accordingly held that the injured party was not estopped from asserting, within the statutory period of review, his newly discovered injuries and establishing that they were causally related to the accident.

Thus it affirmatively appears that whether petitioner is proceeding upon the theory that the neurosis developed since

the first award or that it existed at the time of the first award but has since increased, the petitioner is not precluded by the earlier determination from maintaining this petition for increased disability based upon a neurosis.

The further argument of respondent is that this subsequent petition for an increase in disability compensation is barred because not prosecuted within two years of the date of the accident. A similar argument was raised and disposed of adversely to the party urging it in *Ginter v. Westinghouse Electric & Manufacturing Corp., supra.*

In the case *sub judice,* the allegation of neurological disability in the second petition for augmented incapacity would not be a new and distinct "cause of action" barred by the tolling of the two-year statutory limitation period but merely a new and distinct effect or injury flowing from the same trauma which occurred on March 18, 1948. See *Granahan v. Celanese Corp. of America, Plastics Div.,* 3 *N. J.* 187 (*Sup. Ct.* 1949).

The above jurisdictional questions being disposed of, the problem resolves itself into whether there has been an increase in petitioner's incapacity since the prior adjudication relative to a neurosis or neurological disability.

The record discloses the fact that the claimed neurosis arose shortly after the accident of March 18, 1948. The petitioner's own testimony is to the effect that the nervous condition or neurosis of which she now complains immediately followed the accident of March 18, 1948, although she maintains that it has worsened since that date. Dr. Kummel who testified for petitioner, first examined her on May 24, 1948 (which was some three or four months prior to the date of the initial hearing), at which time he said she appeared quite nervous. He did not go further into the matter of possible neurological injury although he did make note of some complaints which were of a neurological nature.

The fact that this nervous condition that followed closely the compensable accident may have, at first, appeared to be trifling, does not estop petitioner from asserting, within

the statutory period of review, that this neurosis increased in incapacitating effect since the earlier determination. See case of *Torbyn v. South River Sand Co., supra.*

■ The burden to establish an increase in disability based upon a neurosis is upon the petitioner. *Pasquale v. Clyde Piece Dye Works, Inc.,* 120 *N. J. L.* 557 (*Sup. Ct.* 1938).

■ The final inquiry then is: Has petitioner established, by a preponderance of the probabilities, an increase in disability, neurologically speaking, since the initial adjudication?

The evidence shows that Dr. Vincent Riggs, a neurologist, testifying for petitioner, first examined petitioner on October 8, 1951, at which time he made a diagnosis of traumatic neurosis and estimated her disability due to the accident at seven and one-half per cent of total. Dr. Riggs had not seen petitioner prior to October 8, 1951.

Dr. Kummel, also testifying for petitioner, examined her on May 14, 1948, and again on August 29, 1951, finding, on the latter examination, no change in her orthopedic condition. He did, as previously indicated, find her to be somewhat nervous and at the time of his second examination recommended that she be checked by a neurologist.

Respondent's physician, Dr. Jack Blumberg, made an examination of petitioner on October 8, 1951, and found her to be suffering from a neurosis. He estimated her disability, attributable to said neurosis, at three per cent of total. The balance of respondent's medical testimony was, in essence, a denial of the existence of any present disability.

It is apparent from the foregoing medical evidence that no comparison was made of petitioner's present existing disability with her disability as of the date of the first hearing, to determine if any change, of a neurological nature, had occurred since the prior award.

On a petition for increased disability such a comparison is a *sine qua non.* See *Cirillo v. United Engineers & Constructors, Inc.,* 121 *N. J. L.* 511 (*E. & A.* 1939) and *Licker v. J. G. Martin Box Co.,* 127 *N. J. L.* 136 (*Sup. Ct.* 1941).

In the *Cirillo* case it was said, at *page* 514:

"We think that opinion evidence of present disability based only upon existing physical or mental condition standing alone, is not competent to sustain a finding on the relative fact of an increase or a decrease in disability. To make such testimony competent for that purpose the witness should at least be informed from his own knowledge, made manifest, or from proofs *aliunde* incorporated into a question, what the workman's condition was at the time when the court rated it at a fixed partial permanent disability. The use of the word 'increase' or of the word 'decrease' connotes two states of physical condition, one which was and one which is, and there must be knowledge of each state in order to support a conclusion that the present condition marks an increase or a decrease."

█ It is manifest then that an increase in an award cannot be grounded solely upon an estimate of an injured person's present degree of disability. *Hopler v. Hill City Coal and Lumber Co.*, 5 *N. J.* 466 (*Sup. Ct.* 1950).

█ The deputy director, in finding that there had been "some increase in her disability on the basis of a neurosis," relied upon the testimony of Dr. Blumberg and Dr. Riggs, neither of whom was acquainted, by way of a hypothetical question or otherwise, with petitioner's condition at the time of the initial determination. There was therefore, no competent evidence from which the deputy director could have concluded that there had been an increase in disability based upon a neurosis.

This court finds accordingly, that petitioner has failed to establish by competent legal evidence, any increase in her disability in the nature of a neurosis, since the 1948 award. It is unnecessary in the light of the foregoing disposition to further dwell upon the other objections raised by respondent.

The judgment of the Workmen's Compensation Division is accordingly reversed and a judgment in favor of respondent will be entered.